**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ANDREW COLBERT,

    Petitioner,

                                    CASE NO. 2:09-CV-13736

v.                              HONORABLE MARIANNE O. BATTANI
                              UNITED STATES DISTRICT COURT

SHIRLEE HARRY,

       Respondent,

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

      Andrew Colbert, ("Petitioner"), confined at the Carson City Correctional Facility in Carson City, Michigan, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In his application, filed by attorney Jonathan B.D. Simon, petitioner challenges his conviction and sentence for first-degree murder, M.C.L.A. 750.316.  For the reasons stated below, the petition for writ of habeas corpus is **DENIED.**

### I.  Background

      Petitioner was convicted of the above offense following a jury trial in the Macomb County Circuit Court.

      Petitioner and respondent have both provided detailed statements of facts in their pleadings.  Because the facts of this case have been repeated numerous

times, they need not be repeated here in their entirety. Therefore, only a brief

overview of the facts is required. See Nevers v. Killinger, 990 F. Supp. 844, 847

(E.D. Mich. 1997). Accordingly, this Court will recite verbatim the relevant facts

relied upon by the Michigan Court of Appeals, which are presumed correct on

habeas review pursuant to 28 U.S.C. § 2254(e)(1). See Wagner v. Smith, 581

F.3d 410, 413 (6th Cir. 2009):

> Defendant was convicted of murdering his former girlfriend (the victim). The victim's body was discovered in her bedroom, which was in the basement of her mother's house. She had abrasions and contusions on the front of her neck, a large bruise on her scalp from an impact with a "broad surface," and other injuries to her body. The cause of death was determined to be manual strangulation. Material that was consistent with defendant's DNA profile was found underneath the victim's fingernails. When the police spoke to defendant on the day of the offense, he had scratches on his face. Defendant later admitted that he had been in the victim's bedroom. He claimed that he fell asleep and awoke to find the victim on top of him, choking and hitting him. He explained that he reacted by grabbing her neck and knocking her off the bed, causing her to strike her head on the nightstand, before he "slammed" her to the floor, leaving her unconscious. Defendant stated that he was unable to revive the victim and then left the house because he was scared.

> People v. Colbert, No. 277621, * 1 (Mich.Ct.App. June 26, 2008).

The Michigan Court of Appeals affirmed petitioner's conviction, but a

majority of the court remanded the matter to the trial court to conduct an

evidentiary hearing concerning the claim that petitioner raises in his current

petition, namely, that petitioner was required to wear shackles during his trial. Id.

at * 4-5. However, one judge dissented from the majority's decision, stating in

pertinent part:

> The record in this case discloses that when defendant objected to the
> use of leg irons before trial, the trial court stated on the record that the
> legs irons were not visible from the jury box because a screen
> surrounded the bench where defendant would be seated.  When
> defense counsel remarked that the leg irons would be noticeable when
> defendant entered or left the courtroom, the court indicated that
> defendant would be permitted to be brought in and leave only when the
> jury was not present.  Defense counsel also suggested that it might be
> possible for someone in the back row of the jury box to see defendant's
> leg irons if they were of counsel's height and in a standing position, but
> the trial court concluded otherwise.  Additionally, the trial court
> observed that the jurors would be seated in any event.
>
> On this record, there is no basis for concluding that the use of leg irons
> denied defendant his right to a fair trial. The record indicates that the
> leg irons were not visible to the jury and the trial court took precautions
> to ensure that they would not be exposed. Defendant has failed to
> demonstrate actual prejudice.  In light of the trial court's finding that the
> leg irons were not visible from the jury box, and the absence of any
> indication in the record that defendant's use of leg irons was exposed
> to the jury at some point during trial, I am convinced that the use of leg
> irons did not contribute to the jury's verdict.
>
> *Colbert,* No. 277621, Dissenting Opinion, * at 2 (internal citations omitted).

The Macomb County Prosecutor filed leave to appeal with the Michigan

Supreme Court, which reversed the Michigan Court of Appeals' decision to

remand the matter for an evidentiary hearing on petitioner's shackling claim:

> On order of the Court, the application for leave to appeal the June 26,
> 2008 judgment of the Court of Appeals is considered and, in lieu of
> granting leave to appeal, we REVERSE that portion of the Court of
> Appeals opinion and the accompanying order remanding this case to
> the Macomb Circuit Court for further proceedings, for the reasons
> stated in the Court of Appeals dissenting opinion.
>
> *People v. Colbert,* 482 Mich. 996, 756 N.W.2d 66 (2008).

3

Petitioner seeks a writ of habeas corpus on the following ground:

Petitioner was denied his state and federal constitutional right to due process of law where he was required to appear for trial in leg shackles.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established

4

federal law erroneously or incorrectly." <u>Id.</u> at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" <u>Renico v. Lett</u>, 130 S.Ct. 1855, 1862 (2010)(quoting <u>Lindh v. Murphy</u>, 521 U.S. 320, 333, n. 7 (1997); <u>Woodford v. Viscotti</u>, 537 U.S. 19, 24 (2002)(<u>per curiam</u>)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." <u>Harrington v. Richter</u>, 131 S.Ct. 770, 786 (2011)(citing <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." <u>Id.</u>( citing <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003)  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. <u>Id.</u>

"[I]f this standard is difficult to meet, that is because it was meant to be."

5

Harrington, 131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the

AEDPA, does not completely bar federal courts from relitigating claims that have

previously been rejected in the state courts, it preserves the authority for a

federal court to grant habeas relief only "in cases where there is no possibility

fairminded jurists could disagree that the state court's decision conflicts with" the

Supreme Court's precedents. Id.  Indeed, "Section 2254(d) reflects the view that

habeas corpus is a 'guard against extreme malfunctions in the state criminal

justice systems,' not a substitute for ordinary error correction through appeal." Id.

(citing Jackson v. Virginia, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J.,

concurring in judgment)).  Thus, a "readiness to attribute error [to a state court] is

inconsistent with the presumption that state courts know and follow the law."

Woodford, 537 U.S. at 24.  Therefore, in order to obtain habeas relief in federal

court, a state prisoner is required to show that the state court's rejection of his

claim "was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded

disagreement." Harrington, 131 S. Ct. at 786-87.

### III.  Discussion

Petitioner contends that he was denied his due process right to a fair trial

when he was forced to appear at trial wearing leg shackles, when there was no

justification for requiring these restraints.

Prior to the selection of the jury, petitioner's trial counsel informed the trial

6

judge that petitioner was wearing "leg shackles" and asked the judge whether petitioner would "be required to wear leg shackles during the course of the proceedings."  The judge replied that the Sheriff's Department had a policy [of requiring defendants to wear shackles] so long as there was no showing of the shackles to the jury.  The judge ruled that petitioner would be required to wear the shackles, but indicated that the jurors could not see the leg shackles and that petitioner would be behind defense counsel's table when the jurors entered and exited the courtroom.  Counsel objected to petitioner having to wear the shackles, but the judge overruled the objection, observing that there was a screen around the bench which prohibited the jurors from seeing the leg shackles.  The judge again mentioned that petitioner "will be removed from the courtroom when the jury is not present and brought in" when the jury was not present.  Defense counsel expressed concern that the jurors would be able to see the leg shackles when petitioner rose for the jury when they went to exit the courtroom.  Defense counsel also suggested that it might be possible for a person who was seated in the back row of the jury box to see petitioner's leg irons if they were of counsel's height and in a standing position.  The judge indicated that he did not believe that the jurors' line of vision would extend below petitioner's chair. (Tr. 12/5/06, pp. 3-5).

A majority of the Michigan Court of Appeals remanded petitioner's case back to the trial court for an evidentiary hearing on petitioner's claim, with one

judge dissenting.  The Michigan Supreme Court reversed the Michigan Court of

Appeals' decision and affirmed the conviction.  In doing so, the Michigan

Supreme Court adopted the reasons stated by the dissenting opinion of the

Michigan Court of Appeals, in which Judge Zahra opined that an evidentiary

hearing was unnecessary because the record failed to show that petitioner's leg

shackles were visible to the jurors.

     In Deck v. Missouri, 544 U.S. 622, 629 (2005), the U.S. Supreme Court

held that "the Fifth and Fourteenth Amendments prohibit the use of physical

restraints visible to the jury absent a trial court determination, in the exercise of

its discretion, that they are justified by a state interest specific to a particular

trial."

     Deck's facts and holding, however, "concerned only visible restraints at

trial." Mendoza v. Berghuis, 544 F.3d 650, 654 (6th Cir. 2008).  Here, both the

trial court judge and the Michigan Supreme Court factually found that petitioner

had failed to establish that his leg restraints were visible to the jurors at his trial.

In considering federal habeas petitions, a federal district court must presume the

correctness of state court factual determinations, and a habeas petitioner may

rebut this presumption only with clear and convincing evidence. See Bailey v.

Mitchell, 271 F. 3d 652, 656 (6th Cir. 2001); 28 U.S.C. § 2254(e)(1) The factual

finding by the trial court and the Michigan Supreme Court [in adopting Judge

Zahra's dissenting opinion] that petitioner's leg shackles were not visible to the

jurors is binding on this Court unless petitioner can show that it is clearly erroneous. See Earhart v. Konteh, 589 F.3d 337, 349 (6th Cir. 2009)(citing 28 U.S.C. § 2254(e)(1)). Petitioner is not entitled to habeas relief on his claim, because he has presented no evidence that his leg shackles were visible during the trial. Mendoza, 544 F. 3d at 655; See also Freeman v. Trombley, 744 F.Supp.2d 697, 716-17 (E.D. Mich. 2010)(state appellate court's determination that petitioner did not experience due process violation due to allegedly appearing in court wearing prison garb and shackles was neither contrary to nor involved unreasonable application of clearly established federal law; there was no evidence that anyone on jury had seen petitioner so attired). Moreover, even if petitioner's shackling presented a "close case" to the Michigan courts, this Court is not free to hold that the Michigan Supreme Court's rejection of petitioner's shackling claim was objectively unreasonable. See Mendoza, 544 F. 3d at 655.

Assuming that the jurors may have seen petitioner's leg shackles, petitioner would nevertheless not be entitled to habeas relief because any error would have been harmless in light of the overwhelming evidence against petitioner. The shackling of a defendant is harmless error if there is overwhelming evidence of the defendant's guilt. See Lakin v. Stine, 431 F.3d 959, 966 (6th Cir. 2005); See also Robinson v. Gundy, 174 Fed. Appx. 886, 893 (6th Cir. 2006).

9

2:09-cv-13736-MOB-RSW   Doc # 7   Filed 12/07/11   Pg 10 of 12   Pg ID 1904

In the present case, there was compelling evidence of petitioner's guilt. Several witnesses testified that the victim and petitioner had a romantic relationship, which the victim broke off prior to her death. Petitioner did not want the relationship to end. The victim told other persons that she was afraid of petitioner and that he had been stalking her prior to her death. On the night of the victim's death, petitioner showed up uninvited at her home and woke up the victim's mother to inform her that he had just seen the victim bringing a man into the house. More importantly, petitioner admitted to police that he returned to the victim's home later that night and that he woke up at some point with the victim on top of him, choking and hitting him. Petitioner told the police that he struck the victim and that she hit her head on the nightstand and fell to the floor, but that petitioner had he tried to revive her. The medical examiner, however, indicated that the victim had been strangled to death, and petitioner's DNA had been found underneath the victim's fingernails. The Medical Examiner described the victim's wounds as "defensive wounds," and opined that the victim had been strangled "face to face." Petitioner had abrasions on his eyelids, under his eyes, on his face, and on his neck. This was compelling evidence from which the jury could conclude that petitioner intentionally murdered the victim by strangling her, and that the victim fought for her life by scratching him.

In light of the overwhelming evidence of petitioner's guilt, petitioner is unable to show that even if the jury did observe him in leg irons, he was denied

due process and a fair trial, so as to entitle him to habeas relief. Lakin, 431 F. 3d at 966.

In light of the fact that there is no evidence that the jurors saw petitioner's leg shackles and that there was overwhelming evidence of petitioner's guilt, the Michigan Supreme Court's rejection of petitioner's shackling claim was not contrary to, or an unreasonable application of clearly established law, so as to entitle petitioner to habeas relief. See Pearl v. Cason, 86 Fed.Appx. 858, 859 (6th Cir. 2004).

### IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. Id. at 484. "The district court must issue or deny a certificate of appealability when it enters

11

a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. See Millender v. Adams, 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002).

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the Petition for a Writ of Habeas Corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a Certificate of Appealability is **DENIED.**


s/Marianne O. Battani
Marianne O. Battani
United States District Judge

Dated:  December 7, 2011

I hereby certify that a copy of the foregoing document was served upon the Petitioner and  counsel of record on December 7, 2011, by electronic and/or ordinary mail.

s/Bernadette Thebolt
Case Manager